ESTATE OF JOSEPH (a/k/a Guiseppi) NICHINELLO, JOSEPH A. NICHINELLO, ADMINISTRATOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Nichinello v. Commissioner
Docket No. 4790-76.
United States Tax Court
T.C. Memo 1977-394; 1977 Tax Ct. Memo LEXIS 43; 36 T.C.M. (CCH) 1599; T.C.M. (RIA) 770394; November 15, 1977, Filed Mario Misci and Joseph G. Spinale, Jr., for the petitioner. John O. Tannenbaum, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined a deficiency of $8,733.92 in petitioner's Federal estate tax. The principal issue in dispute is whether the decedent, the settlor of an inter vivos trust, retained power as trustee in conjunction with another trustee to designate the persons *44 who would possess or enjoy the corpus or income from the trust so as to render the value of the transferred property includible in his gross estate pursuant to section 2036(a)(2). [1]/ If the answer to this issue is in the negative, we must decide whether the transfer by decedent of real property to the inter vivos trust was made in contemplation of death within the meaning of section 2035. FINDINGS OF FACT Decedent Joseph (a/k/a Guiseppi) Nichinello died intestate on January 13, 1974. Joseph A. Nichinello (hereinafter Joseph), decedent's son and administrator of his estate, was a legal resident of Revere, Massachusetts, at the time the petition was filed in the instant case. On July 9, 1974, the Federal estate tax return for decedent's estate was filed with the District Director of Internal Revenue, Boston, Massachusetts. On June 5, 1972, decedent transferred three parcels of real property to himself and his son, Joseph, as trustees of the Nichinello Realty Trust (hereinafter referred to as the trust). The designated beneficiaries *45 were decedent's three children--Joseph, Anthony R. Nichinello, and Ann Tupper. The real property transferred by decedent to himself and Joseph as trustees consisted of the following: (a) A store building and land located at 35 Revere Street, Revere, Massachusetts, with a value of $15,000; (b) A two-family wood dwelling and land located at 825 Broadway, Revere, Massachusetts, with a value of $25,000; and (c) A three-family wood dwelling and land located at 21 Rose Street, Revere, Massachusetts, with a value of $25,000. Article IV of the trust instrument provides as follows: So much of the net income as the Trustees may determine from time to time shall be paid to the beneficiaries during the term of this Trust as hereinafter provided, or to the issue of any beneficiary who shall decease during the term hereof, and in default of any such issue to the surviving beneficiaries. Upon termination of the Trust, as hereinafter provided, all of the trust property, including any accumulated income therefrom, shall be distributed in equal shares to the beneficiaries thereof, who are then living and to the issue of any deceased beneficiary by right of representation, and in default *46 of any such issue to the survivors of said beneficiaries. On the date of the transfer of the real estate to the trust, decedent was a 64-year-old widower, who had no known serious medical problems. In making the transfers decedent was motivated by a desire to divest himself of responsibility, enjoy more freedom to travel, and assist in giving his children some degree of financial security. On October 30, 1972, decedent was admitted to Revere Memorial Hospital complaining of pains in his back and legs and frequency of urination. The medical history recorded at the time of his admission set forth: "No operations. Always in good health." Decedent was diagnosed as having a tumor in the urinary bladder and underwent surgery on November 7, 1972. On April 1, 1973, decedent was admitted to the Massachusetts General Hospital where he was diagnosed as having cancer of the bladder. Decedent underwent surgery for this condition on April 3, 1973, and again on June 18, 1973. He was readmitted to the Massachusetts General Hospital on September 11, 1973, where he again underwent surgery for the same condition on September 12, 1973. He died as a result of cancer of the bladder on January 13, 1974. *47 In the notice of deficiency, respondent determined that, under sections 2035 and 2036, the transfers of real property to the trust created for the benefit of decedent's children are includible in his gross estate in the amount of $65,000. OPINION Section 2036(a)(2) provides as follows: SEC. 2036. TRANSFERS WITH RETAINED LIFE ESTATE. (a) General Rule.--The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death-- (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom. A power vested in the settlor-trustee to distribute trust income or to accumulate such income and add it to principal denies to the trust beneficiaries the privilege of immediate enjoyment of the transferred property *48 and conditions their right to enjoyment upon their surviving the termination of the trust. Such power is sufficient to constitute a power to designate the persons who will enjoy the property or the income therefrom within the meaning of section 2036(a)(2). ; , affg. on this issue ; ; ; sec. 20.2036-1(b)(3), Estate Tax Regs. Where at the time of his death the settlor of an irrevocable trust, alone or in conjunction with others, retains such power to distribute or accumulate trust income, both the original principal and accumulated income are includible in the settlor's gross estate under that section. [2]/ ; ; . *49 Petitioner argues that the language of article IV of the trust instrument, pertaining to the distribution of the trust income and corpus, grants the trustees only managerial and administrative powers over the Massachusetts trusts and requires them to pay over the income to the beneficiaries. Any failure by the trustees to do so, petitioner contends, could be remedied by recourse to the courts of the Commonwealth of Massachusetts. We disagree. Decedent named himself and his son as co-trustees of the irrevocable trust created for the benefit of his three children. [3]/ The first paragraph of article IV gives the trustees the broad discretionary power to distribute "[so] much of the net income as [they] may determine from time to time." The second paragraph of article IV requires the trustees, upon termination of the trust, to distribute "all of the trust property, including any accumulated income therefrom," to the *50 beneficiaries. Reading the article as a whole, it is clear that no obligation was imposed on the trustees to pay out the income currently or on a regular basis, and no standard was prescribed for them to follow. They had discretion as to whether and when they would distribute the income. Such retained power, exercisable in conjunction with the other trustee, was not an administrative one but was a power to distribute or accumulate income according to the trustees' unfettered discretion. To be sure, the beneficiaries of a trust may sue to enforce its provisions. However, they may enforce only those rights that are granted to them by the trust instrument. See, e.g., *51 ; . Since the trustees in the instant case were granted the power to distribute or accumulate net income and this power was not limited by a determinable external standard, the beneficiaries could not compel distributions by suing in a court of equity. See ; ; . We find nothing in the Massachusetts court decisions cited by petitioner which effectively prevents a settlor from retaining discretion over the distribution of the income of a trust. Thus under the terms of the instant trust instrument, the trustees could reasonably prefer one beneficiary over another by varying the timing or amount of distributions, or they could simply make no distributions at all until the trust was terminated. The beneficiaries had no absolute right to receive any income unless decedent, as one of the trustees, in conjunction with the other *52 one, so decided, and this reservation of economic power by decedent is exactly the sort of retained power to which section 2036(a)(2) was directed. We hold that the power retained by decedent was one to distribute or accumulate net income and constituted a right to "designate" beneficiaries within the meaning of section 2036(a)(2). Since we conclude that respondent's determination under that section must be sustained, we need not reach his alternative contention under section 2035. To reflect the foregoing, Decision will be entered for the respondent. Footnotes
1. /↩ All section references are to the Internal Revenue Code of 1954, as in effect on the date of decedent's death, unless otherwise noted.
2. /↩ The notice of deficiency issued by respondent in the instant case included in the gross estate only the value of the principal ($65,000) contributed to the trust. There is no evidence in the record as to amount, if any, of accumulated income.
3. /↩ Of course, the mere fact that decedent named himself as one of the trustees does not render the corpus or net income of the trust includible in his gross estate. ; see also . Whether decedent could exercise his retained powers alone or could exercise them only in conjunction with another person is immaterial. Sec. 20.2036-1(b)(3), Estate Tax Regs.